UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:12-cv-213-KSF

SHERRI STANFIELD                                                                                    PLAINTIFF

vs.                                          **OPINION AND ORDER**

CAROLYN W. COLVIN, Acting Commissioner
    of Social Security                                                                              DEFENDANT

* * * * * * * *

Sherri Stanfield, the plaintiff, brought this action for judicial review pursuant to 42 U.S.C. 405(g) of the Commissioner of the Social Security Administration's ("SSA") denial of her claim for a period of disability, disability insurance benefits, and supplemental security income. She claims the Commissioner's decision was not supported by substantial evidence, and thus this Court should reverse that decision.

I.      **Procedural History and Factual Background**

On March 5, 2009, Ms. Stanfield filed applications for a period of disability, disability benefits, and supplemental security income [TR 154-61]. She claims her disability began in June of 2006 [TR 40]. The SSA initially denied both applications on July 17, 2009 [TR 78-85], reconsidered, and denied them again on November 23, 2009 [TR 88-94]. The plaintiff then requested a hearing before an administrative law judge ("ALJ"). Following an February 8, 2011 hearing, ALJ Larry A. Temin rendered an opinion unfavorable to the plaintiff on March 24, 2011 [TR 9-30]. The SSA's Appeals Council denied further review on August 27, 2012 [TR 1-6]. This appeal to the United States District Court followed that denial of review.

Stanfield was forty-two years old at the time of the ALJ's decision [TR 154]. She has a bachelor's degree in music education and a master's degree in music [TR 36]. While she was

previously employed as a high school music teacher and band director, at the time of the decision she was employed as a substitute teacher and private music instructor [TR 198-212]. She asserts that disability necessitated these changes in employment [TR 212], recounting voluntarily terminating her full-time employment in June of 2006 when it became apparent to her that her symptoms would prevent her from continuing in her chosen career [TR 40, 198]. Thereafter, she was employed intermittently as a sales clerk before beginning her current employment [TR 198].

The plaintiff suspects a ruptured appendix in 2002, and history of depression, precipitated the accumulation of conditions that resulted in her inability to work [TR 60-1]. In January of 2006, she visited an ER after reporting suicidal thoughts to her therapist [TR 703]. While alcohol abuse exacerbated these earlier mental problems, Stanfield reports no continuing abuse [TR 56]. A consulting examiner, Dr. Teri Caudill, diagnosed her with a major depressive disorder in July of 2009 [TR 510]. Dr. Greg Kennebeck diagnosed her first physical manifestations as Degenerative Disc Disease in March of 2008 [TR 410,481]. In May of the following year, Stanfield was referred to Dr. Michael Luggen and diagnosed with fibromyalgia [TR 496].

ALJ Temin found plaintiff had not engaged in substantial gainful activity since July 15, 2006 and had severe impairments of fibromyalgia, cervical spine degenerative disc disease, alcohol and benzodiazepine abuse, affective disorder, and anxiety disorder [TR 15]. According to the ALJ's opinion, while the plaintiff was not able to perform her past work, these impairments did not meet any of the *per se* disabilities listed in 20 CFR Part 404, Subpart P, Appendix 1, nor did they otherwise qualify the plaintiff as disabled [TR 15-23]. While this finding was in concert with the findings of the medical agent and consulting agent, they were in contradiction with the treating physician's opinion (Dr. Luggen's).

The plaintiff alleges the ALJ erred in his determination in three ways. First, the plaintiff claims the ALJ's residual functional capacity ("RFC") determination gave improperly little weight to the treating physician's findings. Second, she claims the RFC determination was in error in improperly accounting for her mental impairments. Finally, the plaintiff contends the ALJ's opinion lacks the requisite "narrative discussion" that SSR 96-8P mandates each ALJ's RFC determination contain. These errors, Stanfield contends, make the ALJ's findings unsupported by substantial evidence.

## II.     Standard of Review

The Social Security Act ("the Act") grants those denied disability benefits the right to judicial review of their determination. 42 U.S.C. 405(g). The Act, however, does not grant courts unlimited powers in such a review. The Commissioner's decision is reviewable to determine either if the decision was arbitrary and capricious or if it was outside the Commissioner's statutory authority. *Johnson v. Sec'y of H.H.S.*, 948 F.2d 989, 991 (6th Cir. 1991). However, the Commissioner's findings of fact are determinative insofar as those findings are based on substantial evidence. *Id.* Further, "if [the decision] is supported by substantial evidence, the Commissioner's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Tyra v. Sec'y of H.H.S.*, 896 F.2d. 1024, 1028 (1990).

To qualify as disabled under the Act, a claimant must lack "the ability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Com'r of Social* Security, 502 F.3d 532, 539 (6th Cir. 2007) (citation omitted); 42 U.S.C. 423(d)(1). Such impairment need not be attributed to a single cause, but may be the result of a combination of impairing conditions. 20 C.F.R. 1520(c). To determine whether a person qualifies as disabled under the Social Security Act, the

Commissioner must follow a five-step process. 20 C.F.R. § 404.1520(a)-(e). This five step process has been described as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found disabled.

3. If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.

5. Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). It is the determinations made at each step of this process that may warrant judicial review for their basis in substantial evidence.

The substantial evidence standard affords great deference to the Commissioner's decision. "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (per curiam) (citation omitted). "This court does not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Id*. "It is the ALJ's province to make determinations as to the credibility and veracity of witnesses, and these decisions are to be accorded great deference." *Gooch v. Sec'y of H.H.S.*, 833 F.2d 589, 592 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988). While the substantial evidence standard limits the review of the ALJ's decision available to the claimant, the standard also restricts the logic and evidence an ALJ may use in that decision. Principles constrain the logic an ALJ may employ to arrive at a

determination.  For example, a single piece of evidence contrary to other substantial evidence in the record is insufficient to support a finding based on substantial evidence.  *Ellis v. Schweicker*, 739 F.2d 245, 249 (6th Cir. 1984).  Further, an ALJ may not mischaracterize contrary evidence to support a conclusion.  *Cornett v. Benham Coal, Inc.*, 227 F.3d 569 (6th Cir. 2000).  Other restrictions limit the weight which contradictory evidence must be given.

Generally, a treating physician's findings receive greater weight than the evaluations of other professionals.  "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians."  *Rogers v. Comm'r of Soc. Sec.* , 486 F.3d 234, 242 (6th Cir. 2007) (citing 20 C.F.R. § 416.927(d)(2)).  If the treating physician's evaluation is not contradicted, it must be given "complete deference."  *Walker v. Sec'y of H.H.S.*, 980 F.2d 1066, 1070 (6th Cir. 1992). Caveats and modifiers suggest the qualified nature of the rule.  The treating physician's opinion may be rejected when unsupported by objective medical evidence.  *Walters*, 127 F.3d at 530. The treating opinion might not receive controlling weight if inconsistent with other evidence and unsupported by sufficient clinical findings.  *Bogle v. Sullivan*, 998 F.2d 342, 347-8 (6th Cir. 1993).  Nonetheless, when denied controlling weight, the treating opinion is not simply disregarded.  "[T]he ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors."  *Id*.  In contrast, while a consulting physician's opinions should not be disregarded when favorable to a claimant, *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1984), consulting opinions are not entitled to the same deference as a treating physician's opinion. *Barker v. Shalala*, 40 F.3d 789, 794 (1994).

5

### III.   Analysis

#### A.   Little Weight Given to Treating Physician's Opinion

In arriving at his RFC determination, ALJ Temin gave "little weight" to Dr. Luggen's assessment [TR 688-92] of the claimant's RFC [TR 19]. As with any ALJ decision disregarding a treating physician's opinion, the disregard of Dr. Luggen's assessment must have an articulated basis. *Shelman v. Heckler*, 821 F.2d 216, 321 (6th Cir. 1987). The ALJ cited Dr. Luggen's assessment as being inconsistent both with the objective findings and the claimant's testimony [TR 19]. The claimant contests the permissibility of using objective evidence and the inconsistency between the assessment and testimony. Neither argument is availing.

The claimant argues the treating assessment's inconsistencies with objective medical evidence are impermissible bases on which to disregard Dr. Luggen's assessment because objective medical evidence is neither required nor possible in evaluating fibromyalgia [DN 15, 7]. No precedent is cited to support this position, though Stanfield notes the ALJ's acknowledgment of the limitations of physical evidence and objective tests in diagnosing fibromyalgia. *Id*. However, if objective evidence were to be completely disregarded in fibromyalgia diagnoses, courts and the SSA would find themselves in the curious position of relying solely on subjective evidence to determine disability. As the Commissioner suggests, this would effectively make fibromyalgia a *per se* disability, contradicting the Sixth Circuit's established rule to the contrary [DN 18, p. 8, n 5]. *Vance v. Comm'r of Soc. Sec.*, 260 F.App'x 801, 806 (6th Cir. 2008). Neither logic nor precedent supports such a position. Given the difficulty of evaluating disability in fibromyalgia cases, however, this circuit has been cautious about over reliance on objective medical evidence in assessing fibromyalgia claims. *See Preston v. Sec. of H.H.S.*, 854 F.2d 815, 820 (6th Cir. 1988). While the court has questioned the use of objective evidence in disputing a fibromyalgia diagnosis, *see Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245 (6th Cir. 2007), it has found objective evidence useful in

6

evaluating the physical severity of disability due to fibromyalgia. *Huffaker v. Metro. Life Ins. Co*, 271 F.App'x 493, 500 (6th Cir. 2008) (citation omitted).

Here, the ALJ was not using objective evidence to contradict the diagnosis of fibromyalgia—he conceded the claimant had impairments from fibromyalgia [TR 17]—his quarrel with the treating opinion was with the severity of those impairments. In evaluating severity, the ALJ was justified in using objective medical findings. *Huffaker,* 271 F.App'x at 500. Among these objective findings, the ALJ noted the claimant has "normal strength, range of motion, neurological examination, and ability to move about" [TR 19]. As such, ALJ Temin's use of objective medical evidence to contradict Dr. Luggen's assessment was not improper.

The claimant further contests the ALJ's characterization of her testimony as inconsistent with Dr. Luggen's RFC assessment. As her counsel emphasizes, her testimony at the hearing trumpeted the same limitations Dr. Luggen found [TR 48-55]. That is not all she said. The contradiction with the treating opinion was not in her recitation of her limitations but in her description of her daily activities and work schedule. "The claimant ambulates without assistance, manages her household and personal care, works, reports her pain medications help alleviate her pain, and has been observed to perform activities without difficulties when distracted" [TR 19]. It was her testimony about activities and work life that the ALJ found inconsistent with Dr. Luggen's assessment. This, too, serves as substantial evidence to disregard the treating physician's opinion.

While relying on this portion of Stanfield's testimony to discount Dr. Luggen's assessment, the ALJ found other portions of the claimant's testimony unreliable. Generally, an ALJ is in the best position to make credibility determinations. The claimant's credibility may be properly discounted "to a certain degree . . . where an [ALJ] finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters* at 531. Furthermore, reviewing courts accord that credibility determination "great weight and deference." *Id*. An

7

ALJ's "duty of observing a witness's demeanor and credibility" justifies this deference, along with this court's inability to make an informed credibility determination. *Id*. The ALJ found the claimant's complaints "concerning the intensity, persistence and limiting effects of [her] symptoms… not credible to the extent they are inconsistent with the [RFC determination]."

Stanfield protests that the ALJ discredits her testimony when it contradicts his conclusions yet relies on other portions when it supports his conclusion. The ALJ found part of the claimant's testimony non-credible for the purposes of substantiating the treating physician's opinion. Other parts, however—including testimony describing the physical and emotional stresses of her present work and its duration and frequency—were credible enough for its use to contradict Dr. Luggen's RFC determination. Her criticism seems less valid when the nature of that "cherry-picked" testimony is considered. The portions of the testimony the ALJ found non-credible were those portions that could not be substantiated with verifiable evidence. Portions where verifiable evidence might be available, such as the physical stresses involved in substitute teaching, her work schedule, and her daily activities, were given more weight. The plaintiff's reliance on *Hogg v. Shalala,* 45 F.3d 276 (8th Cir. 1995), for a counterpoint is misplaced. According to the plaintiff, *Hogg* stands for the contention that an ability to perform light housework does not evidence an ability to engage in "full-time competitive employment." *Id.* at 277. The claimant's disability there, however, was founded in part on her "borderline intelligence." *Id*. Here, the ALJ was using the claimant's performance of light housework to evidence her physical, not mental, abilities.

Even without evidence of her household work, however, the ALJ is in the proper position to make credibility determinations about the claimant's testimony. Such determinations necessarily find some testimony more credible than others. Thus, the ALJ's RFC determination remains grounded in substantial evidence despite its disregard of only portions of testimony. These credibility findings conflicted with Dr. Luggen's RFC assessment and, along with

objective evidence of the physical limitations her fibromyalgia produces, thus serve as a valid factor in deciding to accord Dr. Luggen's assessment decreased weight.

### B. Improper Weight to Mental Impairments

Stanfield asserts her mental impairments should have received greater weight in the ALJ's RFC determination. The claimant maintains the ALJ's analysis gave too little weight to the opinion of the consulting examiner, Dr. Terri Caudill. This imbalance is evidenced, she claims, in a discrepancy between the ALJ's ultimate RFC determination and global assessment of functioning ("GAF") score of 48 (showing "serious limitations"). However, the ALJ's decision recognized the plaintiff's "physical and mental complaints are intertwined" [TR 20] and correspondingly considered Stanfield's multiple impairing conditions in concert. The ALJ also professes to have given much credence to Dr. Caudill's report [TR 23], though his interpretation of that report was less favorable to the claimant's position than hers.

The GAF's absence from the ALJ's decision does not indicate a lack of consideration for Stanfield's mental impairments. A GAF score is but one piece of evidence in considering mental impairment. Referencing it "is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). While Stanfield points to it only in arguing Dr. Caudill's opinion was improperly weighted, it adds little substance to her argument. The GAF score, assigned by Dr. Caudill, is merely a numerical summary of findings on the patient's mental status. As such, the relevant inquiry is whether the consulting examiner's findings were properly considered. ALJ Temin detailed Dr. Caudill's findings in his opinion [TR 22-3] and claims to have given them great weight [TR 23]. While the ALJ's opinion does not reference the GAF score, such a reference is not a necessary part of Dr. Caudill's findings.

The ALJ's RFC determination professes to incorporate Dr. Caudill's findings of mental limitations. "The claimant is able to remember and carry out only short and simple instructions. She cannot interact with coworkers or supervisors more than occasionally. The claimant can

9

have only superficial interaction with the general public. Her job should not require an inflexible work pace and should not require more than ordinary and routine changes in work setting or duties" [TR 16-7]. His discussion later noted "moderate restrictions in social functioning"; not "more than moderate impairment in her ability to concentrate, persist, or maintain work pace"; and "diminished stress tolerance" [TR 23]. Stanfield has not established additional mental impairments that were excluded. The ALJ found the limitations consistent with Dr. Caudill's report and included them in his RFC determination.

### C. Lack of "narrative discussion"

Stanfield claims ALJ Temin failed to adequately explain his assessment of the claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a 'regular and continuing basis'" [DN 15, 12 (*citing* SSR 96-8p (S.S.A.), 1996 WL 374184)]. The plaintiff cites a Social Security Ruling requiring the ALJ to "include a narrative discussion describing how the evidence supports each conclusion... [including] the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e. 8 hours a day, for 5 days a week, or an equivalent work schedule" SSR 96-8P (S.S.A.), 1996 WL 374184. The Commissioner retorts that the regulations define "RFC as one's 'remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis'" [DN 18, 12 (*citing* SSR 96-8p, 1996 WL 374184 at 3)]. As such, the Commissioner argues, the ALJ's RFC discussion encompasses his discussion of sustained working ability. However, the RFC's definition and its discussion are distinct. While an RFC inherently includes a claimant's ability to work on a sustained basis, an ALJ must still explain that determination. *See* SSR 96-8p, 1996 WL 374184. ALJ Temin just barely did so.

ALJ Temin's discussion includes only a brief explanation of his conclusion that Stanfield would be able to work on a full-time (five days per week) basis. He notes the claimant reported to Dr. Caudill teaching four students private music lessons on Mondays and Wednesdays, and

that she continues to substitute teach [TR 23]. The ALJ also regurgitated Dr. Caudill's assessment of Stanfield's mental impairments and mentioned the third party function statements made on her behalf. This is the extent of his analysis of her ability to work on a sustained basis.

Despite the ALJ's brief discussion, Stanfield points to no additional evidence to suggest she could not perform in the limited capacity the RFC details on a full-time basis. Aside from Dr. Luggen's assessment, little evidence suggests her conditions fluctuate rapidly. While she usually accepts only one substitute teaching assignment per week, her testimony suggests it is on these days that she overcomes her condition, not that it is any more severe [TR 42]. This is consistent with the ALJ's finding that she could no longer perform her previous work, but could perform sustained work at her RFC. The record suggests her physical and mental faculties are diminished, but consistent. The plaintiff has noted nothing in the record suggesting her conditions are more severe on some days than others. While the ALJ's discussion is brief, it mentions both "specific medical facts" in listing Dr. Caudill's assessments and her reactions to medications and "nonmedical evidence" in citing her work history and daily activities. SSR 96-8p, 1996 WL 374184. This satisfies the letter (if not the explanatory spirit) of the regulations. As such, this court has little basis to find ALJ Temin's "narrative discussion" lacking.

## IV.    Conclusion

Stanfield's impairments are the result of conditions including mental illness and fibromyalgia. These conditions defy ready medical verification. The ALJ must determine which conflicting, essentially circumstantial, evidence is reliable. The difficulty of this task is one of the underpinnings of the high bar the substantial evidence standard places on reviewing courts. It is a high bar Stanfield has not crossed. Despite her legitimate observations that the treating physician's opinion, her mental impairments, or both might have been given more weight, the ALJ's weighting of the conflicting evidence is grounded in logic and substantial evidence. Dr.

Luggen's opinion was disregarded because of a conflict with other medical experts, the claimant's testimony, and objective evidence of her impairment's severity. Evidence of Stanfield's mental impairments was given considerable weight, though the claimant seems to view that evidence as pointing to a more impairing condition than did the ALJ. The logic of those two decisions was adequately, if perfunctorily, explained. Here, that logic was not so conclusive as to require remand for further explanation. Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's Motion for Summary Judgment [DE 15] is **DENIED**.

2. The Commissioner's Motion for Summary Judgment [DE 18] is **GRANTED**.

3. Judgment consistent with this Opinion will be entered contemporaneously.

This July 30, 2013.

Signed By:

*Karl S. Forester* KSF

United States Senior Judge